IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES ROLAND, *et al.*,                    §
                                           §
         Plaintiffs,                       §
                                           §
v.                                         §          Civil Action No. 3:10-CV-0224-N
                                           §
JASON GREEN, *et al.*,                     §
                                           §
         Defendants.                       §

## ORDER

This Order addresses the Plaintiffs' motions to remand and motion for sanctions [4 & 28]. Because the Securities Litigation Uniform Standards Act of 1998 ("SLUSA")[1] expressly provides for the removal of actions similar to this case, the Court denies the motions. And, because the Plaintiffs bring claims "based upon the statutory or common law of" Louisiana and "alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. § 77p(b)(1), the Court dismisses this action with prejudice.

### I. ORIGINS OF THE PLAINTIFFS' SECURITIES FRAUD ACTION

This action presents another episode related to the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the "Stanford Defendants"). The

---

[1]Pub. L. 105-353, 112 Stat. 3227. SLUSA substantively amended identically the Securities Act of 1933 and the Securities Exchange Act of 1934. *See* 15 U.S.C. §§ 77p(b) ('33 Act), 78bb(f) ('34 Act). For consistency, the Court refers only to the Securities Act provision.

ORDER – PAGE 1

Stanford Defendants allegedly swindled billions of dollars from investors through an elaborate and international Ponzi scheme. As part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession of the" "Receivership Assets" and "Receivership Records" (collectively, the "Receivership Estate"). *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). Among other things, the Receivership Order enjoined litigation involving potential Receivership Estate assets.

In short, the Plaintiffs here invested in Stanford International Bank ("SIB") certificates of deposits ("CDs") on the advice of certain investment advisors (the "Investment Advisor Defendants")[2] and with the assistance of the Stanford Trust Company ("Stanford Trust") and its officers and directors (together with Stanford Trust, the "Trust Defendants").[3] Stanford Trust acted as custodian and trustee for the Plaintiffs' individual retirement accounts ("IRAs") and trusts. The Plaintiffs originally filed suit against the Defendants in Louisiana state court. Defendants Grady Layfield, Hank Mills, and John Schwab (the "Removing Defendants") removed to the Middle District of Louisiana, arguing that the Court's litigation injunction supplied federal question jurisdiction. Notice of Removal [1]. Defendant SEI Investments Company ("SEI") later separately consented to removal, simultaneously

---

[2]The following Defendants are Investment Advisor Defendants: Jason Green, Grady Layfield, Hank Mills, Charles Jantzi, Tiffany Angelle, James Fontenot, Dirk Harris, Thomas Newland, and Jay Comeaux. *See* Pls.' Original Pet. at 5-6 [1-3] [hereinafter "Petition"].

[3]The following Defendants are Trust Defendants: Stanford Trust, Zack Parrish, Bernard Young, Lena Stinson, Jay Comeaux, Rhonda Lear, Jack Bruno, J.D. Perry, Joe Klingen, Russ Newton, Danny Bogar, Jim Weller, and John Does 1-10. *See* Petition at 6-7.

asserting that SLUSA provided an independent basis for removal because the SIB CDs should qualify as "covered securities" under SLUSA [5]. The MDL Panel subsequently transferred the action to this Court for consideration with other Stanford-related cases [36 & 37].

The Plaintiffs object to this Court's exercise of subject matter jurisdiction on several grounds. The Plaintiffs first move to remand in response to the Removing Defendants' Notice of Removal, contending primarily that the litigation stay fails to provide a cognizable federal question justifying removal. The Plaintiffs' second motion to remand disputes both SEI's SLUSA-based removal arguments and whether SEI complied with certain removal requirements articulated in *Getty Oil. See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254 (5th Cir. 1988). The Plaintiffs' second remand motion also seeks sanctions against SEI both for ignoring the alleged removal deficiencies and for presenting purportedly frivolous arguments. The Court first considers the Plaintiffs' procedural objections to removal before analyzing whether SLUSA mandates dismissal of the Plaintiffs' claims.

## II. SEI's Independent Basis for Removal Is Properly Before the Court

The Plaintiffs argue that SEI essentially filed a second removal petition when it provided an independent basis for removal. According to the Plaintiffs, that means SEI was required to file its independent basis for removal within thirty days after the Removing Defendants filed their removal petition or the date when the first Defendant waived service of process. The Plaintiffs contend that those two dates are the same in this case, because the Removing Defendants waived service of process upon removal and that, therefore, SEI untimely filed its independent basis for removal. The Plaintiffs also assert that both attempts

at removal fail because the Removing Defendants and SEI did not obtain the consent of four Defendants who waived service of process prior to September 28, 2009.[4]

The Court disagrees. Stating an alternative justification for removal does not constitute filing a second removal petition. The Plaintiffs point to no caselaw to the contrary. And, to hold otherwise would have the nonsensical and judicially-inefficient result of mandating that all served defendants affirmatively assent to any defendant's theory of federal jurisdiction whenever proffered. Our jurisprudence requires served defendants to consent only once – at the time the removal petition is filed. 28 U.S.C. § 1446(a); *Getty Oil*, 841 F.2d at 1261 & n.9. To allow only first-to-remove defendants to present arguments for removal, moreover, would bind all other defendants to potentially faulty grounds for removal in cases that may otherwise be properly removable. Thus, the Court considers SEI's SLUSA-based justification for removal in addition to that provided by the Removing Defendants. The Court holds that it may retain jurisdiction if either theory is valid.

The Plaintiffs' consent-to-removal argument also fails. Only defendants served prior to removal need affirmatively consent to a properly filed petition. *See Getty Oil*, 841 F.2d at 1263 ("[S]ince all served defendants must join in the petition, and since the petition must be submitted within thirty days of service on the first defendant, all served defendants must join in the petition no later than thirty days from the day on which the first defendant was

---

[4]The Plaintiffs do not explain why this date is significant, but it is twenty-nine days before October 27, 2009, the date the Plaintiffs filed their second remand motion. Thus, September 28th appears significant because the Plaintiffs could verify at that time that only four Defendants had not consented to removal within thirty days of waiving service. Several other Defendants filed waivers between September 29 and October 27. *See* Second Mot. to Remand Ex. B [28-5].

served."); *see also Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) ("[Defendant's] failure to join in the removal petition is not a bar to the federal court's jurisdiction. [Defendant] could not have joined in it because, as [Plaintiff] acknowledges, [Defendant] was not even served until after the case had been removed."). The Plaintiffs admit that no Defendants had been served prior to the date the Removing Defendants filed their Notice of Removal. *See* Pls.' Second Mot. for Remand at 25 n.14. And, the Removing Defendants noted that fact in their removal petition. *See* Notice of Removal at 4. Accordingly, neither SEI nor any other Defendant was obligated to join the Removing Defendants' petition; SEI's later-filed formal consent to removal was superfluous for propriety-of-removal purposes.[5] And, in light of the Court's finding that SEI did not file a second notice of removal, the Removing Defendants' notice of removal was the only petition subject to consent-to-removal procedural requirements. The Court therefore finds that the Removing Defendants' removal was procedurally proper.

## III. SLUSA "Preemption" Provides a Federal Question Justifying Removal

SLUSA traces its history to the Private Securities Litigation Reform Act ("PSLRA"). Pub. L. 104-67, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C.) (1995). Believing that the "class-action device was being used to injure the entire U.S. economy," Congress enacted the PSLRA to combat "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner*

---

[5]In any case, defendants not served at the time of removal and who are dissatisfied with federal jurisdiction remain free to move for remand. *See* 28 U.S.C. § 1448 ("This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case."). No Defendants have apprised the Court of their disagreement with removal.

*& Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (citations and internal quotation marks omitted). Among other provisions, the PSLRA caps damage and attorneys' fee awards, creates a "'safe harbor' for forward-looking statements, impose[s] new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate[s] [the] imposition of sanctions for frivolous litigation, . . . authorize[s] a stay of discovery pending resolution of any motion to dismiss," and "imposes heightened pleading requirements in actions brought pursuant to § 10b and Rule 10b-5." *Id.* at 81-82 (internal citations omitted). Congress hoped that the PSLRA would inhibit "nuisance filings, [the] targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent," which had "resulted in extortionate settlements, chilled any discussion of issuers' future prospects, and deterred qualified individuals from serving on boards of directors." *Id.* at 81 (citations and internal quotation marks omitted).

The PSLRA worked as designed; the number of meritless federal securities fraud class actions decreased. "But the effort also had an unintended consequence: It prompted at least some members of the plaintiffs' bar to avoid the federal forum altogether." *Id.* at 82. Although "state-court litigation of class actions involving nationally traded securities had previously been rare," securities fraud plaintiffs post-PSLRA increasingly turned to state-law causes of action brought in state courts. *Id.*

"To stem this shif[t] from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of [the PSLRA], Congress enacted SLUSA." *Id.* (internal citations and quotation marks omitted) (first alteration in original); *see also In re Enron Corp. Sec., Derivative & ERISA*

*Litig.*, 535 F.3d 325, 338 (5th Cir. 2008) (explaining that Congress enacted SLUSA to further the PSLRA's purposes).  Although commonly viewed as a preemption statute, SLUSA more properly precludes certain actions.  *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 637 n.1 (2006) ("The preclusion provision is often called a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court.").  SLUSA provides in relevant part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

### A. SLUSA Expressly Authorizes Removal

SLUSA expressly provides for removal of actions potentially violative of its class action limitations.  *See* 15 U.S.C. § 77p(c) ("Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).").  And, a plethora of caselaw supports SLUSA removal.  *See, e.g.*, *Kircher*, 547 U.S. at 644 ("[A] motion to remand claiming the action is not precluded [by SLUSA] must be seen as posing a jurisdictional issue."); *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219-23 (9th Cir. 2009) ("[SLUSA's] separate provision for a preclusion defense

requiring the dismissal of covered class actions creates a federal question hook on which removal can hang.") (citations omitted).  Accordingly, the Court may retain jurisdiction provided that this action runs afoul of SLUSA's class action limitations.

### B. The Court May Look Beyond the Pleadings to Determine Whether SLUSA Applies

The Plaintiffs nonetheless argue under the well-pleaded complaint rule that their decision to bring state-law claims in a state-court forum deserves deference.  But, in the SLUSA context, the Plaintiffs are not the "masters of their complaint" able to plead around federal jurisdiction.  *See, e.g.*, *Romano v. Kazacos*, 609 F.3d 512, 518-20 & n.2 (2d Cir. 2010) (holding that plaintiffs may not skirt SLUSA by failing to plead "federal claims in state proceedings").  "[T]here exists a corollary to the well-pleaded complaint rule – the 'artful pleading' rule – pursuant to which [a] plaintiff cannot avoid removal by declining to plead 'necessary federal questions.'" *Id.* at 518-19 (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)).  The artful pleading rule applies when, as here, a federal statute contains an express removal provision or preempts state law.  *Id.* at 519.  Under the artful pleading rule, "courts look beyond the face of an 'artfully pled' complaint to determine whether [a] plaintiff has 'cloth[ed] a federal law claim in state garb' by pleading state law claims that actually arise under federal law." *Id.* (quoting *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)) (latter alteration in original).  Accordingly, in conducting its preclusion analysis, the Court is not constrained to take the Plaintiffs' allegations at face value.  *Cf. id.* at 519-20 ("'Courts may look to – they must look to – the substance of a complaint's allegations in applying SLUSA.  Otherwise, SLUSA enforcement would reduce to a formalistic search through the pages of the complaint for magic words . . . and nothing

more.'" (quoting *Segal v. Fifth Third Bank*, 581 F.3d 305, 310 (6th Cir. 2009))) (omission in original); *see also Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 301 (3d Cir. 2005) (courts "scrutinize[] the pleadings to arrive at the 'essence' of a state law claim, in order to prevent artful drafting from circumventing SLUSA preemption") (collecting cases). Additionally, because SLUSA preclusion necessarily challenges subject matter jurisdiction, the Court may "make factual findings which are decisive of its jurisdiction." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) ("Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981))). The Court now turns to consider SLUSA's preclusive effect in this case.

### IV. SLUSA PRECLUDES THE PLAINTIFFS' ACTION

SLUSA precludes an action when "four conditions are satisfied: (1) the action is a 'covered class action;' (2) the claims are based on state law; (3) the action involves one or more 'covered securities;' and (4) the claims allege a misrepresentation or omission of material fact 'in connection with the purchase or sale' of the security." *Enron*, at 338-39 (citing *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701 (5th Cir. 2004); *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253 (11th Cir. 2003)).[6] The Court

---

[6]Courts have phrased variously the four conditions. The Second Circuit, for example, examines whether a suit "(1) is a 'covered' class action (2) based on state statutory or common law that (3) alleges that defendants made a 'misrepresentation or omission of a material fact' or 'used or employed any manipulative device or contrivance in connection with the purchase or sale' (4) of a covered security." *Romano*, 609 F.3d at 518. Since

addresses these factors below.  Because this action plainly meets SLUSA's covered class action definition and brings only state-law claims, the Court begins by analyzing the two elements of SLUSA preclusion most at issue in this case.

### A. The Plaintiffs Allege Misrepresentations or Omissions of Material Facts

Because the "issue of [SLUSA] preemption . . . hinges on the content of the allegation – not on the label affixed to the cause of action," *Miller*, 391 F.3d at 702, the Plaintiffs' claims all concern "untrue statement[s] or omission[s] of a material fact."[7]  15 U.S.C. § 77p(b)(1).  In paragraphs incorporated into all of their thirteen claims, the Plaintiffs allege certain "material representations" made by the Investment Advisor Defendants.  Petition at 10.  According to the Plaintiffs, those "representations were inaccurate or false."  *Id.* at 11. The Trust Defendants also, among other things, allegedly failed to "inform the IRA and Trust Accounts holders of the" risks associated with SIB CDs, *id.* at 26, and misrepresented the Plaintiffs' IRA and trust account values.  *Id.* at 28.  SEI, for its part, allegedly aided and abetted the scheme "by joining the SG and Trust sales force to market[,] promote[,] and

_____

*Herndon*, the Eleventh Circuit has restated the final two prongs almost identically to *Romano*.  *See Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1345 (11th Cir. 2008).  The Ninth Circuit uses a five-factor analysis that inquires whether "(1) the class action . . . is a 'covered' class action, and that it alleges (2) state and common law claims and (3) a misrepresentation or omission of material fact. . . . (4) . . . 'in connection with' the purchase or sale of a security under [SLUSA], and (5) . . . involv[ing] 'covered securities.'" *U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 843-44 (9th Cir. 2007).  The different wordings do not appear materially to affect courts' substantive preclusion analyses.

[7]*Cf. LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) (holding that this principle extends to breach of contract and other claims that technically lack a misrepresentation or omission element because "when one of a plaintiff's necessary facts is a misrepresentation, the plaintiff cannot avoid SLUSA by merely altering the legal theory that makes that misrepresentation actionable").

advertise SIB to prospective clients in order to assist and enable SG and the Trust to continue to sell SIB CD's based on the misrepresentations that they were fully insured." *Id.* at 32.

Finally, the Plaintiffs also have sued Certain Underwriters at Lloyd's of London in Syndicates 2987, 1866, 1084, 1274, 4000, & 1183, XYZ Insurance Company, ABC Bond Company, and the RST Insurance Companies (collectively, the "Insurer Defendants"). The Plaintiffs assert that the Insurer Defendants' coverage obligations include the alleged misrepresentations and omissions; thus those claims also satisfy SLUSA's misrepresentation or omission element. *Id.* at 45. Accordingly, this action satisfies SLUSA's misrepresentation or omission element. *Cf. Miller*, 391 F.3d at 702 (holding that SLUSA precluded breach of contract claim and "was designed to ensure that *all* causes of action involving allegations of misrepresentation or omission in connection with covered securities would be subject to the requirements of the [PSLRA]") (emphasis added) (citations omitted); *Segal*, 581 F.3d at 311 ("[SLUSA] does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentations in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple.").

### B. The Defendants Allegedly Made Misrepresentations and Omissions "in Connection with" the Sale of "Covered Securities"

The final requirement for SLUSA preclusion is whether the plaintiff alleges the use of misrepresentations, omissions, or deceptive devices "in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b)(1) & (b)(2). Courts have come to varying conclusions on what "in connection with" requires. *See, e.g.*, *Romano*, 609 F.3d at 521-22 n.5 (collecting different "in connection with" standards from the Sixth, Seventh, Eighth,

Ninth, and Eleventh Circuits). But, the caselaw makes clear that direct transactions in "covered securities," such as a plaintiff's purchase of stock on the New York Stock Exchange, most readily present opportunities for SLUSA preclusion. SEI characterizes this case as falling within that category. The Court disagrees.

*1. The SIB CDs Are Not SLUSA-Covered Securities, But that Is Not the End of the Story.* — SLUSA limits covered securities for its purposes to a subset of those under the Securities and Exchange Acts generally. *See* 15 U.S.C. § 77p(f)(3). For a security to qualify as a covered security under SLUSA, it must be "traded nationally and listed on a regulated national exchange." *Dabit*, 547 U.S. at 83; *see also* 15 U.S.C. § 77r(b)(1). Alternatively, SLUSA also considers any security "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940 [15 U.S.C. § 80a-1 et seq.]" to be a covered security. 15 U.S.C. § 77r(b)(2) (alteration in original).

The SIB CDs do not fall under either category. The Court has some sympathy with SEI's argument that SIB and certain of the Stanford entities should have registered under the Investment Company Act and that, therefore, the SIB CDs should have been covered securities under SLUSA. As SEI notes, a contrary conclusion risks encouraging companies' artful dodging of federal securities laws. But, SLUSA's plain language will not accommodate SEI's interpretation. SIB failed to register under the Investment Company Act, and the SIB CDs themselves were never traded on a national exchange. The Court therefore holds that the SIB CDs are not covered securities under SLUSA.

That, however, does not end the SLUSA inquiry. The Supreme Court has "rejected [the] view" that "an alleged fraud is 'in connection with' a purchase or sale of securities only

when the plaintiff himself was defrauded into purchasing or selling particular securities."
*Dabit*, 547 U.S. at 85.   In line with the Supreme Court's "broad interpretation[s]" of the "in
connection with" phrase in section 10(b) and Rule 10b-5 caselaw and in order to further the
PSLRA's goals, the *Dabit* Court held that the "in connection with" requirement is met if "the
fraud alleged 'coincide[s]' with a securities transaction – whether by the plaintiff or someone
else." *Id.* (citing, *inter alia*, *SEC v. Zandford*, 535 U.S. 813, 820, 822 (2002); *United States
v. O'Hagan*, 521 U.S. 642, 651 (1997)).   "The requisite showing, in other words, is
'deception in connection with the purchase or sale of any security,' not deception of an
identifiable purchaser or seller." *Id.* (quoting *O'Hagan*, 521 U.S. at 658).   Significantly here,
several courts have held that section 10b, Rule 10b-5, and SLUSA do not require actual
dealing in ascertainable securities.   *See, e.g.*, *Zandford*, 535 U.S. at 819 (noting that the
Securities Exchange Act "should be construed not technically and restrictively, but flexibly
to effectuate its remedial purposes," and encompasses "accept[ing] payments for securities
that [a broker] never intends to deliver") (citations and internal quotation marks omitted);[8]
*Grippo v. Perazzo*, 357 F.3d 1218, 1223 (11th Cir. 2004) (holding that "in connection with"
requirement was met in securities fraud case where "no proof exist[ed] that a security was
actually bought or sold"); *Scala v. Citicorp Inc.*, 2011 WL 900297, at *4 (N.D. Cal. 2011)
("If a covered class action brought under state law concerns a transaction involving covered

---

[8]*Zandford* notably reversed the Fourth Circuit's more restricted holding that the "in
connection with" requirement was not met because the "securities [transactions] were merely
incidental to a fraud that lay in absconding with the proceeds of sales that were conducted
in a routine and customary fashion" as part of a "scheme [whose purpose] was simply to steal
. . . assets rather to engage in manipulation of a particular security."   535 U.S. at 817-18
(citations and internal quotation marks omitted).

securities at all, it is subject to dismissal under SLUSA – even if it also involves non-covered securities or non-securities.") (footnote and citations omitted).[9]

This "dramatically simplified" and expansive interpretation of SLUSA's preclusive reach militates in favor of holding that the Defendants' misrepresentations and omissions were made in connection with transactions in covered securities. *U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 844 (9th Cir. 2007). Courts have considered various factors in their "in connection with" analyses, but the strength of the nexus between an allegedly fraudulent scheme and securities transactions serves as the primary thread tying the caselaw together. *See, e.g.*, *Rowinski*, 398 F.3d at 302 & n.7 (providing four nonexclusive "guideposts in a flexible preemption inquiry," of which the first consideration is "whether the covered class action alleges a 'fraudulent scheme' that 'coincides' with the purchase or sale of securities" (citing *Zandford*, 535 U.S. at 825)).[10] The Circuits have used different variations of

---

[9]*See also Horattas v. Citigroup Fin. Markets Inc.*, 532 F. Supp. 2d 891, 901-903 (W.D. Mich. 2007) (holding that, post-*Dabit*, SLUSA precludes claims even if plaintiffs "did not buy or sell any securities and were not deceived about the value of any securities bought or sold").

[10]The other three *Rowinski* factors look to "whether the complaint alleges a material misrepresentation or omission disseminated to the public in a medium upon which a reasonable investor would rely . . . ; . . .whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities . . . ; and . . . whether the prayer for relief connects the state law claims to the purchase or sale of securities." 398 F.3d at 302 (internal citations and quotation marks omitted). This case meets those factors. The Plaintiffs allege the existence of a SIB CD "marketing plan" that purportedly adhered to relevant federal and state consumer/investor protection laws. Petition at 8, 11. The investor-investment advisor relationship inherently concerns trading in securities. *See Rowinski*, 398 F.3d at 302 (discussing investor-broker context (quoting *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985))). And, as detailed below, the Plaintiffs' sought-after damages stem from transactions involving covered securities.

ORDER – PAGE 14

"coincide" in that analysis, including a "more exacting 'induced' standard." *Romano*, 609 F.3d at 522 & n.5.

Given this melange of opinions and in the apparent absence of controlling Fifth Circuit authority on the subject, the Court will follow the Eleventh Circuit's approach, which asks whether a group of plaintiffs premises their claims on either "fraud that induced [the plaintiffs] to invest with [the defendants] . . . or a fraudulent scheme that coincided and depended upon the purchase or sale of securities . . . ." *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1349 (11th Cir. 2008). The Plaintiffs seek to establish the Defendants' liability for misrepresentations and omissions "in connection with" transactions in SLUSA-covered securities under both theories.

**2. The Plaintiffs' Purchases of SIB CDs were "Induced" by the Misrepresentation that SIB Invested in a Portfolio Including SLUSA-Covered Securities. —** Among other alleged misrepresentations, the Plaintiffs assert that the Investment Advisor Defendants touted that "SIB's multi-billion dollar investment portfolio of assets employed a sizeable team of skilled and experienced analysts to monitor and manage the portfolio." Petition at 10. The Investment Advisor Defendants also allegedly represented that SIB invested its assets in secure, adequately-capitalized, and properly-leveraged companies and funds. *Id.* at 11. Crucially, those investments allegedly were in "'highly marketable securities issued by stable governments, strong multinational companies and major international banks.'" *Id.* at 13. Although the Plaintiffs' petition does not list the "highly marketable securities," the

Court finds that SIB led the Plaintiffs to believe that the SIB CDs were backed, at least in part, by SIB's investments in SLUSA-covered securities.[11]

As evidenced by the Plaintiffs' other allegations, that belief induced the Plaintiffs to purchase SIB CDs. The SIB CDs' allure stemmed in large part from their value as a debt-instrument substitute for equity investments. The SIB CDs "were called 'certificates of deposit' in order to create a perception of security and limited degree of risk for the Plaintiffs and to create the impression and inference that the SIB CDs had the same degree of risk as certificates of deposit issued by commercial banks regulated by the FDIC and Federal Reserve Board." *Id.* at 11. Like well-performing equities, however, the SIB CDs also offered liquidity combined with the potential for high investment returns. Those returns ostensibly were produced by "the consistent, double-digit returns on the bank's investment portfolio." *Id.* SIB claimed to have invested its portfolio at least in part in SLUSA-covered securities; that claim helped explain the CDs' purported low-risk/high-yield nature and, in the Plaintiffs' minds, set them apart from analogous but "highly speculative debt instruments similar to junk bonds." *Id.* at 13.

But, SIB did not invest as advertised. "Instead, [its] portfolio consisted primarily of illiquid investments or no investments at all." *Id.* at 16. And, "[i]f Plaintiffs had been aware of the truth, Plaintiffs would not have purchased the SIB CDs." *Id.* at 15. Accordingly, the Court reads the Plaintiffs' Petition to allege that the Plaintiffs' CD purchases were induced

---

[11]This inference seems modest given the prevalence of multinational companies on national stock exchanges and the tendency for governments to issue marketable bonds.

by a belief that the SIB CDs were backed in part by investments in SLUSA-covered securities.[12]

### 3. The Plaintiffs Allege a Fraudulent Scheme that Coincided with and Depended on the Sale of SLUSA-Covered Securities. — The Plaintiffs' allegations also reasonably imply that the Stanford scheme coincided with and depended on the Plaintiffs' sale of SLUSA-covered securities to finance SIB CD purchases. To begin with, the Plaintiffs clearly plead the existence of a fraudulent scheme. The Plaintiffs assert that the Investment Advisor Defendants initially solicited community leaders to purchase SIB CDs. "These early investors received high returns to establish the legitimacy of the SIB CDs. The Investment Advisor Defendants then used the fact that known business leaders earned the promised

---

[12]In this respect, this action resembles the Madoff Ponzi scheme "feeder fund" cases that also applied SLUSA preclusion. *See In re Kingate Mgmt. Ltd. Litig.*, 2011 WL 1362106, at *7 (S.D.N.Y. 2011) (noting that "[t]he majority of district courts within the Second Circuit have found, under similar [Madoff-related] facts, that claims like the ones brought here are 'in connection with covered securities'") (collecting cases). The Court sees no substantive difference between the misrepresentations and omissions here; "fraud is at the heart" of the Plaintiffs' claims. *Id.* at *8. This observation does not "stretch[] SLUSA to cover [a] chain of investment . . . [that] snaps even the most flexible rubber band." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399 (S.D.N.Y. 2010). Both Stanford and Madoff purported to take investors' funds and purchase covered securities for their investors' benefit. Stanford took the incremental and conceptually immaterial additional step of promising that his investors' returns would come in the form of CD proceeds rather than directly from covered securities. Those returns, however, ostensibly were produced by and directly attributable to Stanford's investing in a portfolio that a reasonable investor would conclude contained SLUSA-covered securities.

The Madoff cases that have declined to apply SLUSA preclusion are distinguishable and represent a minority approach. *See In re Kingate*, 2011 WL 1362106, at *8-9 (noting that *Anwar* "is the sole case in which a court within the Southern District found that SLUSA did not preempt fraud claims related to a Madoff feeder fund" and distinguishing another case because "the alleged fraud in [that] case . . . related to the hedge funds themselves rather than to any covered securities in the funds' investment portfolios" (citing *Pension Comm. of the Montreal Univ. Pension Plan v. Banc of America Sec., LLC*, 750 F. Supp. 2d 450 (S.D.N.Y. 2010))).

return as a means to attract other investors." *Id.* at 14.  So long as an ever-expanding pool of new investors purchased SIB CDs, SIB successfully maintained the outward appearance of "'operat[ing]' as a going concern." *Id.* at 15.  But, in reality, SIB's revenue consisted almost exclusively of the "cash flow from SIB CD[] sales." *Id.*  The Plaintiffs thus plead a classic Ponzi scheme.  *See Janvey v. Alguire*, 2011 WL 2937949, at *9 (5th Cir. 2011) ("A Ponzi scheme is a fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. . . . [A]s new investments [come] in, some of the new money [is] used to pay earlier investors.'') (some alterations in original; internal quotation marks and citations omitted); Petition at 9 (characterizing Stanford Defendants' operation as a Ponzi scheme).  Because the Plaintiffs' purchase of SIB CDs helped fuel and perpetuate the Stanford scheme, the Plaintiffs' allegations satisfy the coincided-with and depended-upon elements.

The Plaintiffs also almost certainly sold SLUSA-covered securities to purchase SIB CDs.  As pled, the Plaintiffs generally encountered the Stanford scheme in a specific manner: "When a person would retire from a company, Stanford Trust and [the] Investment Advisor Defendants would actively seek the funds from the retirement funds of the former employees and would attempt to have these funds rolled over into IRA's of which either Pershing or the Trust was the custodian."  Petition at 24.  Although retirement funds come in a variety of forms that might not all involve SLUSA-covered securities, many of the Plaintiffs' retirement

accounts consisted of IRAs.  And, stocks, bonds, mutual funds,[13] and other SLUSA-covered securities commonly comprise IRA investment portfolios.  The Plaintiffs "rolled their IRA[s] into the Stanford Trust Company" and subsequently purchased SIB CDs.  *Id.* at 8-9.

The investment process described by the Plaintiffs resembles that described in the SEC's investigation.  "During the [SEC's] examination [of SGC], SGC provided a sample of 52 client files wherein SGC's clients liquidated securities to purchase CDs.  The documents reflected that from August 2008 through December 2008, approximately $10.7 million in securities were liquidated to purchase SIB CDs."  *See* TRO App. at 593 [13] (Yoder Decl.), *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298.[14]  The Court therefore finds that at least one of the Plaintiffs acquired SIB CDs with the proceeds of selling SLUSA-covered securities in their IRA portfolios.  Once those transactions were complete, the Plaintiffs' erstwhile retirement funds were then funneled into and furthered the Stanford scheme.[15]

---

[13]Mutual funds are SLUSA-covered securities.  *See, e.g.*, *Segal*, 581 F.3d 305.  Indeed, if a SLUSA-covered security constitutes any part of a security, that security qualifies as a covered security under SLUSA.  *See, e.g.*, *Instituto*, 546 F.3d at 1351.

[14]By Order dated July 22, 2011, the Court advised the parties of its intent to take judicial notice of the Yoder Declaration [65].  *See* FED. R. EVID. 201.  The Court received no objections or responses to its notice.

[15]The transactions need not have been instantaneous.  *See, e.g.*, *Romano*, 609 F.3d at 524 (noting that "*Dabit* . . . does not pivot on temporal limitations" and "declin[ing] to find that the passage of eighteen months between the alleged fraud and the purchase or sale of securities necessarily defeat[ed] SLUSA's 'in connection with' requirement" because that case, as here, concerned "'a string of events that were all intertwined'" (quoting *SEC v. Pirate Investor LLC*, 580 F.3d 233, 245 (4th Cir. 2009))).

ORDER – PAGE 19

This modest finding effectively extends SLUSA preclusion to all Plaintiffs' claims. Because the Plaintiffs have submitted no evidence of their specific IRA holdings, the Court cannot determine whether any specific Plaintiff's account held SLUSA-covered securities. But, SLUSA preclusion applies even if only a single plaintiff sold a single SLUSA-covered security as part of his acquisition of SIB CDs. The Court reasonably draws that inference on the pleadings and evidentiary record before it. It may be that some Plaintiffs' accounts held securities entirely outside SLUSA's purview. By joining this action, however, they rendered their claims subject to SLUSA preclusion to the same extent as those brought by any Plaintiffs who liquidated SLUSA-covered securities. *See Rowinski*, 398 F.3d at 305 (holding that SLUSA's plain language "does not preempt particular 'claims' or 'counts' but rather preempts 'actions,' suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed") (internal citation omitted); *Segal*, 581 F.3d at 311 (holding that SLUSA's plain language and the *Dabit* Court's expansive interpretation of SLUSA's preclusive reach gives courts "no license to draw a line between SLUSA-covered claims that must be dismissed and SLUSA-covered claims that must not be"); *see also Instituto*, 546 F.3d at 1350 ("[E]ven if SLUSA requires a court to assess preclusion claim-by-claim, [it] does not require district courts to act like a prospector panning for a few non-precluded theories amid a river of precluded ones."). Accordingly, this action also satisfies the "in connection with" element because the Plaintiffs allege that the Stanford Ponzi scheme coincided with and depended upon the sale of SLUSA-covered securities.[16]

---

[16]The record would support a determination that many Plaintiffs sold many SLUSA-covered securities to buy SIB CDs, but in view of the analysis here, the Court need reach no further than its finding that at least one Plaintiff did so.

### C. This Action Is a "Covered Class Action"

Both an individual suit and a group of related suits may qualify as a "covered class action" under SLUSA.  15 U.S.C. § 77p(f)(2).  Because this case presently has been consolidated with *Farr v. Green*,[17] the Court looks to the group provisions.[18]  Under SLUSA, "[a] group of lawsuits . . . constitutes a 'covered class action' if: (1) the suits are 'pending in the same court;' (2) the suits involve 'common questions of law or fact;' (3) 'damages are sought on behalf of more than 50 persons;' and (4) 'the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.'"  *Enron*, 535 F.3d at 339 (quoting 15 U.S.C. § 78bb(f)(5)(B)(ii)).

This action constitutes a "covered class action" under SLUSA's group provision.  After transfer from the MDL Panel, *Roland* and *Farr* both were pending before the Court.  Both actions raised largely duplicative questions of law and fact.  Together, they sought relief for over fifty plaintiffs.  And, the Court previously consolidated this action with *Farr*.  The cases therefore are now proceeding as a single action.  Accordingly, this action satisfies SLUSA's covered-class-action element.[19]

---

[17]Civil Action No. 3:10-CV-0225-N (N.D. Tex. transferred by MDL Panel Feb. 5, 2010).  *See* Order of May 12, 2011 (consolidating cases) [54].  No parties objected to consolidation.  Indeed, the Plaintiffs filed no response to SEI's pre-MDL motion for consolidation [7].

[18]While courts typically consider the propriety of removal as of the time of removal, the SLUSA group provisions are an exception to that rule.  *See Enron*, 535 F.3d at 340-41 (rejecting argument that "SLUSA's definition of a 'covered class action' may be applied to preempt claims only at the time of their removal, not at the motion to dismiss stage").

[19]Neither the reasons for consolidation nor the fact that individual cases in the group may have fewer than fifty plaintiffs matters for the purposes of SLUSA's covered class action definition.  It is sufficient that the group of lawsuits collectively seeks relief for more

### D. The Plaintiffs Bring Exclusively State Law Claims

The Plaintiffs indisputably bring claims "based upon the statutory or common law of" Louisiana. 15 U.S.C. § 77p(b). The Plaintiffs assert negligence, breach of contract, negligent misrepresentation, and breach of fiduciary duty claims under Louisiana law. The Plaintiffs also allege violations of the Louisiana Unfair Trade Practices Act and the Louisiana Securities Act. Accordingly, this action satisfies SLUSA's causes-of-action element.

### E. The Court Dismisses this Action

This action qualifies for SLUSA preclusion. Both this case and *Farr*, as consolidated and proceeding individually, constitute "covered class actions" under SLUSA. The Plaintiffs bring exclusively state-law claims and allege that they suffered damages from the Defendants' misrepresentations and omissions made "in connection with" the sale of SLUSA-covered securities under two separate theories: The Plaintiffs allege that the Defendants induced the Plaintiffs' CD purchases by representing that the SIB CDs were backed by SIB's investments in securities that typically qualify as SLUSA-covered securities. The complaint also suggests that at least one Plaintiff exchanged IRA investments in SLUSA-covered securities for SIB CDs. And, as in *Rowinski*, this Court "need not decide whether a count-by-count analysis is appropriate in this case, because [the Plaintiffs have] incorporated every [relevant] allegation into every count in [their Petition]. [The Court's]

---

than fifty persons. And, SLUSA requires only that the cases have been "consolidated . . . for any purpose." *Cf. Instituto*, 546 F.3d at 1347. Here, in any case, because both groups of plaintiffs were "act[ing] in unison" from the beginning, they were "proceed[ing] as a single action" and would have satisfied the group provisions of SLUSA's covered class action definition even without consolidation. *Enron*, 535 F.3d at 340; *see also* Pls.' Mot. to Transfer and accompanying exhibits in *Roland* [3] and *Farr* [3].

SLUSA analysis therefore applies to each of [the Plaintiffs'] counts, and compels the conclusion that each is preempted." 398 F.3d at 305. The Court therefore holds that SLUSA precludes the Plaintiffs from bringing this action.

### CONCLUSION

When the Removing Defendants filed their notice of removal, no Defendants had been served. Thus, no Defendants were required to consent to removal. SEI remained free to present an independent basis for removal, and SLUSA provides an appropriate federal jurisdictional hook. Because the Plaintiffs bring claims "based upon the statutory or common law of" Louisiana and "alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. § 77p(b)(1), SLUSA precludes this action. Accordingly, the Court dismisses this action with prejudice.

Signed August 31, 2011.

David C. Godbey
United States District Judge

ORDER – PAGE 23